**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

HEFTER & CARROLL,

Plaintiff,

v.

MAGID ABRAHAM, both individually and as Co-Trustee of the Abraham Family Trust, and LINDA BOLAND, both individually and as Co-Trustee of the Abraham Family Trust

Defendant.

No. 07 C 4137

## MEMORANDUM OPINION

Before the court is plaintiff's Motion for Entry of Judgment Pursuant to Fed. R. Civ. P. 68. For the reasons explained below, we deny plaintiff's motion.

## BACKGROUND

Plaintiff is a law firm that provided legal services to the Abraham Family Trust, and to defendants Magid Abraham and Linda Boland, in connection with an arbitration proceeding. (Pl. Compl. ¶ 12.) At that time, Mr. Abraham was the president and CEO of comScore Inc., then a privately-held corporation. (Id. at ¶ 13.) On or about April 19, 2000, plaintiff, Mr. Abraham and Ms. Boland executed a letter agreement concerning the fees for plaintiff's services. (See Letter of April 19, 2000, attached as Ex. A to

Defs.' Resp. to Pl.'s Mot. for Entry of Judgment Pursuant to Fed. R. Civ. P. 68.) Among other compensation, the letter agreement granted plaintiff the option to purchase up to 15,000 shares of comScore stock at the initial public offering price if and when comScore conducted an initial public offering. (Id.) comScore conducted its IPO in June 2007 at $16.50 per share. (Pl. Compl. ¶ 21.) Plaintiff alleges that it contacted Mr. Abraham about exercising the option shortly after it learned about the IPO, but that Mr. Abraham disclaimed any obligation to deliver the shares because the IPO date had already passed. (Id. at ¶¶ 28-29.) The option had, in Mr. Abraham's view, expired. Plaintiff claims that it failed to exercise its option on the IPO date only because Mr. Abraham breached his obligation to notify plaintiff that the IPO was imminent. (Id. at ¶ 30.) Plaintiff has filed this lawsuit seeking a declaratory judgment that it is entitled to purchase the shares or, alternatively, money damages for breach of the letter agreement.

On September 12, 2007, before answering plaintiff's complaint, defendants made an offer of judgment pursuant to Fed. R. Civ. P. 68. The offer states, in its entirety:

> Defendants, Magid Abraham, Linda Boland and the Abraham Family Trust, hereby offer pursuant to Fed. R. Civ. P. 68 to allow judgment to be taken against them obligating them to sell to Plaintiff a total of 15,000 shares of stock they own in comScore Inc. at a price of $16.50 per share subject to the conditions applicable to those shares, plus reasonable attorneys' fees and any other

> recoverable costs accrued to date to be determined by the Court.

(Offer of Judgment Pursuant to Rule 68, attached as Ex. A to Pl.'s Mot. for Entry of Judgment Pursuant to Fed. R. Civ. P. 68.) After receiving the offer, plaintiff contacted defendants' counsel seeking to clarify what "conditions" applied to the shares. Decl. of Peter G. Rush (hereinafter "Rush Decl.") at ¶ 3. Defendants responded by providing counsel with the restrictive legend printed on the back of the share certificates. (Id.) The legend states as follows:

> THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND MAY NOT BE SOLD, OFFERED FOR SALE, ASSIGNED, TRANSFERRED, OR OTHERWISE DISPOSED OF, UNLESS REGISTERED PURSUANT TO THE PROVISIONS OF THAT ACT OR UNLESS AN OPINION OF COUNSEL TO THE CORPORATION IS OBTAINED STATING THAT SUCH DISPOSITION IS IN COMPLIANCE WITH AN AVAILABLE EXEMPTION FROM SUCH REGISTRATION.

The parties' current dispute involves their subsequent discussions about the legend's legal effect and whether, and under what circumstances, it would be removed to facilitate resale. According to plaintiff's counsel, defendants' attorney represented "that *the offer was that* the legend would be removed one year after the closing on the plaintiff's purchase of the shares." (Aff. of Daniel S. Hefter (hereinafter "Hefter Aff."), attached as Ex. 6 to Pl.'s Reply, at ¶ 3.) Defendants' attorney, Mr. Rush, recalls a somewhat different discussion. According to Mr. Rush, he explained to Mr. Hefter that it was his understanding, as someone without any

securities-law expertise, that the shares were subject to a one-year holding period, at the end of which the certificate holder could ask the issuer (comScore, in this case) to remove the restrictive legend. (Rush Decl. ¶ 5.) It was Mr. Rush's understanding that the issuer generally complies with such requests. (Id.) Mr. Rush does not represent comScore, which is not a party to this lawsuit, and contends that he "repeatedly" informed Mr. Hefter of this fact. (Id. at ¶ 4.) Accordingly, he did not agree "to include a provision in the Rule 68 Offer committing comScore to remove the Legend." (Id.)

At some point after this initial discussion, but before plaintiffs accepted defendants' Rule 68 offer, Mr. Hefter consulted a securities lawyer, Mr. Tauke. Mr. Tauke spoke with defendants' counsel, as well as counsel for comScore, and requested that the parties enter into an agreement requiring comScore to remove the legend "and thereby assure a speedy sale when legally permissible." (Aff. of Dale B. Tauke (hereinafter "Tauke Aff."), attached as Ex. 4 to Pl.'s Reply, at ¶ 2.)[1] Mr. Tauke states that he was told during this conversation to "go ahead and prepare the agreements," (id.), although there is no indication in the affidavits that the parties had at that point agreed in principle to execute any documents.

[1/] Neither party indicates who initiated these discussions.

On September 27, 2007, the day before the deadline to accept defendants' Rule 68 offer, Mr. Rush spoke with Mr. Hefter by telephone and stated that plaintiff had two options: (a) accept the Rule 68 offer, or (b) "make some sort of settlement proposal." (Rush Decl. at ¶ 7.) The following day plaintiffs filed a Notice of Acceptance including the following clause:

> As clarified by defendants' counsel, the offer is to sell to the plaintiff shares that bear a legend . . . which legend would, if the offer of judgment were to be accepted, be removed one year after the closing on the plaintiff's purchase of those shares, with the obligation to remove that legend at that time being documented in a written agreement to be executed by the parties and by comScore, Inc. prior to the closing . . . . The plaintiffs hereby accept the defendants' offer of judgment as so clarified.

(Pl.'s Notice of Acceptance of Defs.' Rule 68 Offer of Judgment, attached as Ex. 3 to Pl.'s Mot. for Entry of Judgment Pursuant to Fed. R. Civ. P. 68.) Three days later, Mr. Tauke sent to defendants' and comScore's counsel a draft "Stock Agreement" requiring comScore to remove the restrictive legend if certain conditions are met. (Tauke Aff. at ¶ 3; Rush Decl. at ¶ 8.)

Defendants argue that their Rule 68 offer should be enforced according to its terms, which do not purport to bind comScore or any other party to remove the restrictive legend. Although defendants entertained plaintiff's proposal to remove the legend, they argue that that proposal was an alternative to, not a clarification of, their Rule 68 offer. Plaintiff contends that comScore's obligation to remove the legend was part of the offer,

which they timely accepted. Both parties seek to enforce the offer according to their understanding of its terms.

**DISCUSSION**

Rule 68 provides that "[a]t any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued." Fed. R. Civ. P. 68. Rule 68 offers are generally interpreted according to ordinary contract principles, with certain exceptions relevant to this case. Webb v. James, 147 F.3d 617, 620 (7th Cir. 1998). First, unlike run-of-the mill contract offers, declining a Rule 68 offer may have significant consequences for the plaintiff. If the plaintiff obtains a judgment that is not more favorable than the Rule 68 offer, then "the offeree must pay the costs incurred after the making of the offer." Fed. R. Civ. P. 68. Second, Rule 68 offers are irrevocable for a period of 10 days "as though the plaintiff had paid for a 10-day option." Webb, 147 F.3d at 620 (quoting Richardson v. National R.R. Passenger Corp., 49 F.3d 760, 765 (D.C. Cir. 1995)). Accordingly, a plaintiff may clarify the terms of an offer before making a decision "without running the risk of prematurely or inadvertently rejecting the offer." United States v. Hendricks, No. 92 C 1461, 1993 WL 226291, *2 (N.D. Ill. June 24, 1993). Indeed, clarification "furthers the purpose of the Rule,"

Gavoni v. Dobbs House, Inc., 164 F.3d 1071, 1076 (7th Cir. 1999), insofar as "the offeror will be more certain of his potential liability and the court will not be called upon to interpret ambiguous offers." Radecki v. Amoco Oil Co., 858 F.2d 397, 403 (8th Cir. 1988). On the other hand, courts have consistently rejected efforts by either party to "qualify or explicate" the terms of an accepted or a rejected offer. Gavoni, 164 F.3d at 1076.

In this case, defendants' offer referenced "conditions" not set forth in the offer itself. Plaintiff asked defendant what those restrictions were, and defendants responded by providing a copy of the restrictive legend on the back of the share certificates. Plaintiff also asked what effect the legend would have on its ability to sell the shares. According to Mr. Rush, he gave Mr. Hefter a tentative description of the applicable securities laws and never promised to remove the legend from stock certificates. Mr. Hefter states, not entirely at odds with Mr. Rush's recollection, that "the offer was that the legend *would be removed* one year after the closing of the plaintiff's purchase of the shares." Hefter Aff. ¶ 3 (emphasis added). He does not state that Mr. Rush affirmatively agreed that comScore, which Mr. Rush does not represent and which is not a party to this litigation, would remove the legend. Plaintiff did speak with comScore about removing the legend, and defendants and/or comScore solicited draft

agreements from plaintiff pertaining to the legend. But neither the defendants nor comScore agreed to execute those agreements. Most importantly, nothing in the Rule 68 offer itself states or implies that comScore was obligated to remove the legend if plaintiff accepted the offer. See Shorter v. Valley Bank & Trust Co., 678 F.Supp. 714, 720 (N.D.Ill. 1988) (declining to consider the evidence of the parties's pre-offer negotiations because the "offer was what the written offer said."). Indeed, attempting to cobble together the parties' agreement from parol evidence invites the types of disputes we are faced with here and contravenes Rule 68's policy of "avoiding protracted litigation." Webb, 147 F.3d at 621. Relying on the plain language of the offer, we conclude that it did not include any obligation to remove the restrictive legend from the share certificates.[2]

The issue, then, is whether plaintiff's "acceptance" was effective. A binding contract requires an objective manifestation of mutual assent. Abbott Laboratories v. Alpha Therapeutic Corp., 164 F.3d 385, 387 (7th Cir. 1999). It is apparent that plaintiff intended to accept an offer that included a commitment by comScore to remove the legend after the holding period expired. But as we have explained, defendants' offer did not include any such commitment. Radecki, 858 F.2d at 403 ("Clearly, Radecki intended

---

[2/] Accordingly, we reject plaintiff's argument that defendants changed the offer's terms when comScore's share price increased. The offer's terms never varied.

to accept an offer for $525,000 that was not inclusive of attorney fees, which is an offer Amoco had not extended."). Accordingly, there was "no mutual assent, and hence no binding agreement." Id. Plaintiff's purported acceptance was really a counteroffer, one that defendants have not accepted. See Nordby, 199 F.3d at 392 (7th Cir. 1999) ("If the request for fees was deemed a part of the plaintiff's 'acceptance,' then it was not an acceptance but a counteroffer, which Rule 68 does not authorize and which in any event was not accepted.").[3] Defendant points out that a counteroffer does not terminate the offeree's power to accept an irrevocable offer. While this is a correct statement of the law, see Hendricks, 1993 WL 226291, *3, it has no application where, as here, the acceptance does not "mirror" the offer. Radecki, 858 F.2d at 403 ("Radecki's purported acceptance does not sufficiently reflect Amoco's offer and therefore does not amount to an acceptance."). So, while plaintiff could have accepted the Rule 68 offer even after making a counteroffer, that is not what it did in this case. Instead, plaintiff believed that its counteroffer *was* the offer, taking into account its discussions with comScore and with defendants.

---

[3/] The Court in Nordby concluded that the plaintiff's acceptance was not a counteroffer because he had accepted the defendants' unambiguous offer without any qualification. Nordby, 199 F.3d at 391-92 (Offer: "[J]udgment in the amount of $56,003.00 plus $1,000 in costs as *one total sum as to all counts* of the amended complaint.") (emphasis added). Only after accepting the offer did the plaintiff ask the district court for an award of attorneys' fees pursuant to the Illinois Sales Representative Act. Id. at 391. Here, plaintiff's acceptance contained the additional term, preventing a contract from forming.

Defendants also contend that we should disregard those portions of the acceptance that vary from the offer's express terms, citing Sherry v. Protection, Inc., 14 F.Supp.2d 1055, 1058 (N.D.Ill. 1998). In Sherry, the defendant made an offer of judgment in the amount of $5,000 "plus reasonable and properly recoverable costs and reasonable attorneys' fees, under applicable rules, *accrued through the date of acceptance* of this offer." Id. at 1056 (emphasis added). In response, the plaintiff sent defendants' counsel a "Notice of Acceptance" that included language entitling it to recover post-acceptance attorneys' fees. Id. Defendants' counsel informed the plaintiff that this was not an "acceptance" because it varied the terms of the offer. Id. Shortly thereafter, the plaintiff filed a "Notice of Acceptance" with the court reciting the $5,000 figure "plus reasonable and properly recoverable costs and reasonable attorneys' fees accrued *through the date of acceptance* of this Offer." Id. (emphasis added). Despite accepting the defendants' Rule 68 offer, the plaintiff filed a separate petition for post-acceptance attorneys' fees. Id. The court in Sherry concluded that by accepting the offer the plaintiff had knowingly waived any right to collect post-acceptance fees, and entered judgment on the offer as written. Id. at 1058. Sherry is distinguishable because the plaintiff in that case unequivocally accepted the defendants' offer of judgment and then sought to recover additional fees that were expressly

excluded by the offer. Indeed, the Sherry plaintiff does not appear to have had any basis beyond his own preference for a different deal to have insisted on post-acceptance attorneys fees.[4] Here, the parties were negotiating an alternative proposal concerning the same subject matter as the Rule 68 offer: 15,000 restricted shares of comScore stock. Although we have concluded that defendants' Rule 68 offer did not include any commitment to remove the restrictive legend, we do not believe that plaintiff's position was unreasonable given the timing and circumstances of the negotiations. Mr. Rush's statement on the eve of the deadline that plaintiff could accept the offer or "make some sort of settlement proposal" did little to clarify matters. In any event, binding plaintiff to the offer without any provision for the removing the legend would effectively "hold the parties to a contract they never made." Radecki, 858 F.2d at 403.

Neither party has addressed whether plaintiff's counteroffer would, under the circumstances of this case, trigger Rule 68's cost-shifting mechanism in the event of a final judgment less favorable than defendants' offer. Cf., id. (declining to apply Rule 68 cost-shifting "because of the unusual circumstances" of that case). We conclude that it would be premature to render a ruling on that issue at this time.

---

[4] The defendant in Sherry pointed out that the plaintiff's initial acceptance was inconsistent with its offer, and it appears that the plaintiff removed the inconsistent term from the notice of acceptance that it filed with the court. Sherry, 14 F.Supp. 2d at 1056.

**CONCLUSION**

Plaintiff's Motion for Entry of Judgment Pursuant to Fed. R. Civ. P. 68 (15) is denied.

DATE: November 8, 2007

ENTER: ______________________________________________
John F. Grady, United States District Judge